Thompson, Associate Judge, concurring:
I concur in the judgment and also fully concur with Judge Ferren's opinion, except with respect to his conclusion that appellant's "theory of the case presented on appeal [was] raised at trial." Ante at 53. My review of the record persuades me that the trial court was not adequately apprised that defense counsel was pursuing not just a collusion-bias theory but also a corruption-bias theory as to Officer Williams. That is another reason why, in my view, the trial court did not err in precluding appellant's proposed line of questioning.
Defense counsel made multiple statements to the court that indicated that counsel wanted to pursue a collusion-bias theory. For example, on December 18, 2014, when the trial court asked counsel to explain "why a pending investigation involving Off. Williams ... is related ... to your ability ... to raise [a] bias issue," defense counsel said, "First, I think there's an issue of collusion[.]" Counsel further explained that "the issue is how the officers protect each other" since "they all make similar statements as to what happened, going as far as characterizing [William's punch to Barkley] as a straight punch." Counsel said that his "overall *68 theme" was that "officers-when you know your [fellow] officer is in trouble and he's under an investigation, these officers get together in collusion and they prepare their story." Counsel added that "it's about establishing that this unit, this is what they do when they are faced up against allegations of excessive force," i.e., "in that incident where [an arrestee] was hurt, they all ma[k]e up almost the exact same statement."[1] Counsel told the court that the "other issue" was that Officer Couch had the same motive to curry favor with the U.S. Attorney's Office as Officer Williams had, "because that's his partner." Counsel also said that investigating complaining witness Barkley, the witnesses in the Barkley case, obtaining the video footage, and exploring contradictions with Williams's Gerstein "[a]ll ... would have [gone] to [that] theory."[2]
During the further proceedings on December 18, 2014, counsel also told the court that Barkley's attorney had told him that Barkley was not in a fighting position. But counsel then went on to argue that the purpose of the questions he wanted to ask Williams about the incident was to establish "the nature of the injuries" Barkley suffered and to show that this was "not just a run-of-the-mill investigation" and not a "big deal." Again, counsel did not say that the purpose was to show that Williams was a corrupt officer.
In appellant's "Reply to Government's Motion to Reconsider" its Brady ruling, defense counsel perhaps came close to urging the theory he advances on appeal, but even there the theory was tied to a collusion theory. That pleading asserted, "there is evidence of collusion here. If Officer Williams lied about the incident, and colluded with his fellow officers to support his false version , then he has corrupted the judicial process." In the same vein, counsel's pleading emphasized that Williams might be facing charges of aggravated assault or assault with significant bodily injury and stated that Williams's "conduct, and that of his partner, [was] critical to the defense theory." Defense counsel's presentations never advanced the argument that counsel wanted to cross-examine to establish that Williams gave a false account of what happened during the Barkley incident and, on that basis alone, was shown to be a corrupt cop who was not credible regarding his claim that Smith *69 threw a gun into a yard while being chased by police.
The various statement's by appellant's trial counsel were a far cry from appellant's argument now that "[t]rial counsel proposed to demonstrate corruption bias by eliciting that Officer Williams lied in his Gerstein affidavit, thus acting to obstruct the discovery of truth by manufacturing or suppressing his own testimony."[3] Given the various statements by counsel, I believe the trial court cannot be faulted for limiting counsel's questioning in the way the court did with respect to what the court fairly regarded as a "speculative" theory.[4] Further, for the reasons Judge Ferren's opinion explains, the IAD report, which the court reviewed, did not suggest a basis for the theory of corruption bias that appellant now advances.

On December 17, too, counsel had asserted to the court that Officer Couch may have "kn[o]w[n] about Off. Williams's investigation and may have been trying to cover for him." He told the court that he contemplated a "simple bias cross" focused on Couch's possibly "currying favor" on behalf of Williams. Counsel said that with earlier disclosure about the investigation pending against Officer Williams, he might also have "gone down the road that Mr. Williams is actually the person that assaulted Mr. Smith."

Counsel explained that there was "a sworn affidavit that Damien Williams swore to in terms of the Gerstein that he made basically laying out the facts of that underlying case, and ... there are things that contradict that." Shortly thereafter co-counsel interjected that the issue was "also about whether or not [Williams] lied in the Gerstein application, whether or not the officers that were part of that event on December 1st colluded in the lies." These, co-counsel said, were "core issues of credibility." Co-counsel did not mention corruption bias. The trial court said that it would permit counsel "to set up this theory that ... Off. Couch cover[ed] up[ ] because he's partners with ... Off. Williams[.]" On December 19, appearing to follow up on co-counsel's comments, counsel told the court that he wanted to cross-examine Williams not just as to bias (presumably, collusion bias) but also as to "his veracity as he started to speak about the underlying incident regarding self-defense." The court responded that there was "sufficient information in the record from which the jury can judge the credibility of this officer."

As Judge Ferren's opinion acknowledges, defense counsel may argue that there is "a dent in [a witness's] veracity-his credibility," ante at 59, and that there are inconsistencies between a witness's account of a "frenzied event" and the account given by other individuals, ante at 53-61, without thereby necessarily arguing that the witness has the propensity to lie that inheres in a claim of corruption bias.

I read the court's statements in its ruling denying appellant's motion for a new trial as confirmation that counsel's argument led the court to understand that counsel was pursuing a theory of collusion bias. The court stated at page 14 of its order that it "did allow counsel to pursue a corruption bias theory although the theory was mostly speculative." "Speculative" was the word the court had used during the proceedings on December 18 in response to defense counsel's collusion theory. The court explained that there was not "support in the record for allowing [counsel] to use the claim of how all the officers in the two separate cases that are not related are backing each other up," but, nevertheless, noted that counsel had made his point in cross-examining Officer Couch and also said that it would permit the defense to examine Officer Couch again.